IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**OLYMBEC USA, LLC,**

    **Plaintiff,**

v.

Case No. 2:16-cv-948
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth Preston Deavers**

**ASPEN SPECIALTY INSURANCE COMPANY**

and

**CLOSED LOOP REFINING AND RECOVERY, INC.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant Aspen Specialty Insurance Company's ("Aspen") Rule 12(b)(6) Motion to Dismiss the Amended Complaint. (*Def. Mot.*, ECF No. 18.) Plaintiff has filed a Memorandum of Plaintiff Olymbec USA, LLC ("Plaintiff" or "Olymbec") Contra Defendant Aspen Specialty Insurance Company's Motion to Dismiss the Amended Complaint. (*Pl. Mem. Opp.*, ECF No. 20.) Defendant Aspen has filed its Reply. (*Def. Reply*, ECF No. 23.) Plaintiff has also filed an Application for Default Judgment against Defendant Closed Loop Refining and Recovery, Inc. as to liability. (ECF No. 29.) Plaintiff Olymbec has also filed a Notice of Supplement (ECF No. 30), and Motion to File Notice of Supplement *Instanter* (ECF No. 32). Defendant Aspen has filed a Motion to Strike Olymbec USA, LLC's Notice of Supplement and Alternative Response to Notice of Supplement (ECF No. 31) and a Memorandum in Opposition to Olymbec USA, LLC's Motion for Leave to File Notice of Supplement *Instanter*. (ECF No. 33.)

# I. BACKGROUND

The following facts in this insurance liability case are taken from the Amended Complaint. (*Complaint*, ECF No. 15.) On December 19, 2014, Plaintiff Olymbec leased a warehouse property at 2200 Fairwood Avenue, Columbus, Ohio (the "Property") to Defendant Closed Loop Refining and Recovery, Inc. ("Closed Loop"). The lease obligated Closed Loop to purchase insurance and name Olymbec as an additional insured. The lease also provided that Closed Loop would defend and indemnify Plaintiff Olymbec against all claims and liability arising from any use of the Property. Closed Loop intended to use the Property to, among other things, recycle cathode ray tubes ("CRTs").

On or about April 12, 2014, Closed Loop purchased and Aspen issued a Commercial General Liability & Environmental Insurance Policy, No. ERA9VP114. That policy was renewed on or about April 12, 2015, by Policy No. ERA9VP115 (the "Policy"). The Policy term was April 12, 2015 through April 12, 2016. Plaintiff Olymbec is an insured under this policy pursuant to Section III, F:

III. Who is an Insured:

\*\*\*

F. Any person or organization with whom you agree to include as an insured pursuant to an insured contract is an insured, but: (i) only with respect to bodily injury, property damage, environmental damage or personal and advertising injury arising out of your operations, your work, equipment or premises leased or rented by you, or your products which are distributed or sold in the regular course of a vendor's business; and (ii) only for the lesser of the applicable limits of liability set forth in § II. of the Policy or the minimum limits of liability required by the insured contract; however:

\*\*\*

(ECF No. 15-2, p. 21, PageID #237-38.) Policy endorsement ASPER233 0313 specifies that the Property is an insured location for clean-up coverage and site damage coverage. After the Policy was in place, Closed Loop operated its business on the Property.

During the term of the Policy, in March, 2016, the Ohio Environmental Protection Agency ("Ohio EPA") instituted a civil proceeding against Closed Loop. This is the when Olymbec learned

2

that Closed Loop may have been "operating an unpermitted hazardous waste facility at the Property and/or may have been speculatively accumulating CRTs in, on, or at the Property, which accumulation rendered its operations subject to regulation of hazardous wastes." (*Complaint*, ECF No. 15, at ¶ 19.) Olymbec demanded that Closed Loop defend and indemnify it with respect to the Ohio EPA's civil proceeding, and Closed Loop "never responded" to this request. (*Complaint*, ECF No. 15, at ¶¶ 20, 21.)

Olymbec timely notified Defendant Aspen of Ohio EPA's civil proceedings and requested coverage under the policy, which Aspen refused. On August 10, 2016, Olymbec asked Aspen to withdraw its coverage denial and provide coverage, informing Aspen that there was "evidence of broken CRTs at the Property and that, as a result of breakage, hazardous waste was released onto the Property and/or into the structure around the Property." The hazardous waste includes lead. (*Complaint*, ECF No. 15, at ¶¶ 26, 56.) Aspen never responded to the August 10, 2016 request for coverage. Ohio EPA "has informed Olymbec that, as owner of the property, Olymbec is responsible under Ohio law for corrective action related to and closure of what Ohio EPA characterizes as Closed Loop's unpermitted hazardous waste facility." On December 14, 2016, Olymbec submitted an Interim Site Management Plan to Ohio EPA (*Complaint*, ECF No. 15, at ¶¶ 28, 29.) The Interim Site Management Plan includes photographs showing broken CRTs, the "contents of which – including hazardous waste – have been discharged and released into, onto, and/or at the Property." (*Complaint*, ECF No. 15, at ¶ 30.)

The Complaint asserts six causes of action: (I) declaratory judgment; (II) breach of contract; (III) third-party beneficiary liability; (IV) bad faith; (V) defense and indemnification by Closed Loop; and (VI) negligence of Closed Loop.

## II. LEGAL STANDARD

### A. *Federal Rule of Civil Procedure 12(b)(6)*

Defendant Aspen moves for dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Rule requires the Court to construe the complaint in Plaintiffs' favor, accepting the factual allegations of the complaint as true, and then determining whether the factual allegations present any plausible claim upon which relief can be granted. *See Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). However, the Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

> To be considered plausible, a claim must be more than merely conceivable. *Twombley*, 550 U.S. at 556, 127 S.Ct. 1955; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

*Murray, et al., v. The HuffingtonPost.com, Inc.*, 21 F.Supp. 3d 879, 884 (S.D. Ohio 2014).

### B. *Ohio Law Applies*

In deciding a case founded on diversity of citizenship, a federal court must apply the law of the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "In Ohio, insurance is a contract, and the parties' rights under the policy are purely contractual in nature." *Park-Ohio Industries, Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1218 (1992) (citing *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St. 3d 107, 472 N.E.2d 1061, 1062 (1984) (per curiam). As the Sixth Circuit has explained:

4

> Ohio law guides our determination of the issue. "In determining the plain meaning of an insurance contract, the contract should be read as a whole and each word given its appropriate meaning, if possible." *Burdett Oxygen Co. of Cleveland v. Employers Surplus Lines Ins. Co.,* 419 F.2d 247, 248 (6th Cir.1969) (citing *Farmers' Nat'l Bank v. Delaware Ins. Co.,* 83 Ohio St. 309, 94 N.E. 834 (1911)). Where a policy is ambiguous, it is to be liberally construed in favor of the insured. *Fuerstenberg v. Mowell,* 63 Ohio App.2d 120, 122, 409 N.E.2d 1035 (1978). This rule of construction, however, is not applicable if the language is clear, *Fuerstenberg,* 63 Ohio App.2d at 122, 409 N.E.2d 1035, if applying it, would provide an unreasonable or forced interpretation, *Bright v. Ohio Casualty Ins. Co.,* 444 F.2d 1341, 1343 (6th Cir.1971) (citing *Morfoot v. State,* 174 Ohio St. 506, 190 N.E.2d 573 (1963)), or if it would result in an extension of coverage. *West v. McNamara,* 159 Ohio St. 187, 197, 111 N.E.2d 909 (1953). . . .

*United States v. Stip,* 868 F.2d 181, 185 (6th Cir. 1989). The Court is also mindful that Ohio favors adoption of "any reasonable interpretation of an insurance policy that results in coverage." *River Services Co. v. Hartford Accident & Indemnity Co.,* 449 F.Supp. 622, 626 (N.D.Ohio 1977).

> Within an insurance contract, any ambiguity as to the extent of coverage of the insurance policy, particularly where such ambiguity is in words chosen by the insurer, must be liberally construed most favorably to the insured. *Chavers v. St. Paul Fire & Marine Insurance Co.,* 295 F.2d 812 (6th Cir. 1961); *Essex House v. St. Paul Fire & Marine Insurance Co., supra; American Financial Corp. v. Fireman's Fund Ins. Co., supra; Jerger v. Commercial Ins. Co., supra; Travelers Ins. Co. v. Auto-Owners (Mutual) Ins. Co., supra.* Any reasonable interpretation of the policy resulting in coverage of the insured must be adopted by the trial court in Ohio. *Ollier v. Continental Casualty Co.,* 441 F.2d 792 (6th Cir. 1971); *Essex House v. St. Paul Fire & Marine Insurance Co., supra; Butche v. Ohio Casualty Insurance Company,* 174 Ohio St. 144, 187 N.E.2d 20 (1962). Where the choice is between depriving the insured of a substantial portion of his coverage through operation of an exclusion clause or permitting a broader coverage, the interpretation must be in favor of the insured to provide the broader coverage. *Travelers Ins. Co. v. Auto-Owners (Mutual) Ins. Co., supra.*

*Id.* Furthermore, "the burden is on the insurer to prove that a particular claim is precluded by an exclusion provision." *State Farm v. Heirmer,* 720 F.Supp. 1310, 1314 (S.D. Ohio 1988).

### III. DISCUSSION

Plaintiff Olymbec contends that it has adequately pled sufficient facts to support a finding that it was an insured under the Policy, and timely sought coverage for environmental damages –

5

specifically clean-up costs – caused by a pollution incident, for which Aspen denied coverage without investigation, in breach of its policy obligations. (*Pl. Mem. Opp.*, ECF No. 20, at p. 2.)

### A. Pollution Incident

Defendant Aspen agrees that coverage applies under sections 3A (On-Site Clean-Up Costs) and 3C (Site Bodily Injury and Property Damage) to clean-up costs or property damage an insured becomes legally obligated to pay "resulting from a pollution incident." (*Def. Mot.*, ECF No. 18, at p. 4.) The key issue is whether Olymbec's claim comes within the "pollution incident" provision of the Policy. Olymbec alleges that "[i]n its August 10, 2016 letter, Olymbec informed Aspen that there was evidence of broken CRTs at the Property and that, as a result of breakage, hazardous waste was released onto the Property and/or into the structure of the Property." (*Complaint*, ECF No. 15, ¶ 26.) The Complaint further alleges that the "speculative accumulation of CRTs in, on, or at the Property resulted in the breakage of CRTs and release of hazardous waste, including lead, into, onto, and/or at the Property." (*Complaint*, ECF No. 15, ¶ 56.) The Policy defines "pollution incident" and "pollution" as follows:

> **VII. Definitions**
>
> **LL. Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, silt, sediment, fumes, acids, alkalis, chemicals, hazardous substances[1], petroleum hydrocarbons, low level radioactive matter or waste, microbial matter including legionella pneumophila, medical, infectious or pathological waste or waste materials, electromagnetic fields or biological agent.
>
> **MM. Pollution incident** means the discharge, emission, seepage, migration, dispersal, release or escape of any pollutant into or upon land, or any structure on land, the atmosphere or any watercourse or body of water including groundwater, provided such pollutant is not naturally present in the environment in the concentration or amounts discovered.

(ECF No. 15-2, p. 37, PageID #248.)

---

[1] Lead is included in the United States Environmental Protection Agency's *List of Lists* which lists hazardous substances subject to federal regulation. *See* p. 1 at https://www.bnl.gov/esh/env/compliance/docs/SaraTitlezList.pdf

However, Aspen contends that there was no pollution incident because, "[w]here, as here, the purported pollutant is intentionally placed in storage, and has not moved from that location, there is no 'discharge, emission, seepage, migration, dispersal, release or escape' and therefore no 'pollution incident.'" (*Def. Mot.*, ECF No. 18, at p. 10.) This argument is unavailing, however, inasmuch as the word "release" is part of the definition of "pollution incident," and Olymbec's allegations include the assertion that breakage of the CRTs resulted in the *release* of hazardous waste. The use of the word "release," if ambiguous, would be construed in favor of the Plaintiff. If the use of the word "release" is unambiguous, it means what Plaintiff has alleged has occurred is sufficient to be a "release" under the definition. *See Borden, Inc. v. Affiliated F.M. Insurance Co.*, 682 F.Supp. 927, 930 (S.D. Ohio 1987) (interpreting "sudden" and "accidental" according to their ordinary meaning, and finding a clause was not ambiguous). Certainly as alleged in the Complaint, the allegation is sufficient to defeat a Rule 12(b)(6) challenge.

### B. Claim

Aspen further asserts that the Complaint does not present a facially plausible claim because Olymbec has not alleged a pollution incident in accordance with the policy's coverage provision set forth at Section 3A. Section 3A provides the following:

> **Section 3. SITE POLLUTION INCIDENT LIABILITY**
>
> **1. Insuring Agreements**
> Provided the pollution incident takes place in the coverage territory and commences on or after the retroactive date, if applicable, and before the end of the policy period, we will pay those sums that the insured becomes legally obligated to pay as:
>
> **Coverage 3A- On-Site Clean-Up Costs**
> Clean-up costs on, at or under an insured location or non-owned location, provided:
> (i) the pollution incident is both first discovered by a responsible executive and reported to us during the policy period; or
> (ii) a claim for clean-up costs is first made against the insured and reported to us in writing during the policy period or the extended reporting period, if applicable.

(ECF No. 51-2, at p. 18, PageID #229.)

Aspen asserts that "[p]art (ii) of coverage section 3A, and coverage section 3C, apply only if a 'claim' is made and reported in the policy period." (*Def. Mot.* ECF No. 18, at p. 14.) Aspen then narrows the argument in its assertion that "[u]nder coverage sections 3A and 3C, Aspen has a potential duty to defend 'suits.'" (*Id.* at 15.) Aspen then asserts that "the Ohio EPA letters cannot be construed as a suit under Ohio law." (*Id.* at 15.)

The Court must look to the Complaint to determine whether it alleges coverage under the Policy. In the case at bar, the Complaint specifically references the Policy and incorporates it as an exhibit. (*Complaint*, ECF No. 15, ¶ 10, ECF No. 15-2.)

> This Court has recognized that it may consider items appearing in the record of the case, including exhibits, without converting a Rule 12(b)(6) motion into a motion for summary judgment, but only "so long as they are *referred to in the complaint* and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 681 (6th Cir.2011) (emphasis added) (quoting *Bassett v. NCAA,* 528 F.3d 426, 430 (6th Cir.2008)) (internal quotation marks omitted).

*Trustees of Detroit Carpenters Fringe Benefits Fund v. Patrie Const. Co.,* 618 Fed. App'x. 246, 255 (6th Cir. 2015). The Policy provides a process for the insured to report a pollution incident, as follows:

**IV. RIGHTS AND DUTIES OF THE INSURER AND THE INSURED[2]**

**A. Your Duties in the Event of an Occurrence, Offense, Pollution Incident or Wrongful Act**

You must notify us as soon as practicable of any occurrence, offense, pollution incident, or wrongful act, whether or not you have received a claim or suit. To the extent possible, such notice should include:

---

[2] Olymbec filed a Motion to File Notice of Supplement *Instanter* (ECF No. 32), having originally filed its supplement via a Notice. (ECF No. 30.) Defendant Aspen filed a Motion to Strike Plaintiff's Notice (ECF No. 31) and a Memorandum in Opposition to Plaintiff's Motion for Leave to File Notice of Supplement *Instanter* (ECF No. 33.) Specifically, Plaintiff seeks to direct the Court's attention to Section 4 E of the Policy. The provisions of the Policy are before the Court as an exhibit to the Complaint (ECF No. 15-2), and the Court views the Policy in its entirety. Courts must review insurance contracts "to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Tomlinson v. Skolnik,* 44 Ohio St.3d 11, 540 N.E.2d 716, 717-18 (1989) (internal quotation marks omitted). "Ambiguities in insurance policies should be construed liberally in favor of coverage." *Nat'l Dairy Herd,* 750 N.E. 2d at 1174. Plaintiff's Motion to File Notice of Supplement *Instanter* (ECF No. 32) is denied as moot. Likewise, Defendant's Motion to Strike Plaintiff's Notice (ECF No. 31) is also denied as moot.

1. How, when and where the occurrence, offense, pollution incident or wrongful act took place;
2. The names and addresses of any injured persons and witnesses; and
3. The nature and location of any injury or damage arising out of the occurrence, offense, pollution incident or wrongful act.

Notice of an occurrence, offense, pollution incident or wrongful act is not notice of a claim.

Knowledge of an occurrence, offense, pollution incident or wrongful act by any of your agents, servants or employees, or any other person shall not it itself constitute knowledge by you unless a responsible executive or a manager or equivalent level employee in your Risk Management, Insurance or Law Department possesses such knowledge.

If you mistakenly notify another insurer rather than us of an occurrence, offense, pollution incident or wrongful act, such mistaken failure to notify us shall not invalidate coverage so long as you notify us of the occurrence, offense, pollution incident or wrongful act within a reasonable time after you become aware of such error.

**B. Your Duties in the Event of a Claim or Suit**

If a claim is made or suit is brought against any insured, you must:

1. Immediately record the specifics of the claim or suit and the date received;
2. Notify us as soon as practicable;
3. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
4. Authorize us to obtain records and other information;
5. Cooperate with us in the investigation or settlement of the claim or defense against the suit; and
6. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy may also apply.

**C.   Rights and Duties With Respect to Pollution Incidents**

1. In the event the insured becomes aware of a pollution incident or imminent threat thereof, the insured must:
   a. Promptly report the pollution incident or imminent threat thereof to us and to the appropriate governmental authority as required by environmental law;
   b. Mitigate and clean-up any pollution incident or imminent threat thereof to the extent required by environmental law by retaining an environmental professional;
   c. Provide us with proposed work plans, bids, contracts, agreements or any similar document, concerning work to result in clean-up cost (except for emergency response cost), which proposals shall be subject to our right to prior approval; and

9

d. Provide us at reasonable intervals (and always at least 30 days prior to submission of any progress report to any regulatory agency) written progress reports concerning the work resulting in clean-up cost.

2. We shall have the right but not the duty to mitigate and clean-up (including assuming direct control of any mitigation or clean-up) any pollution incident that may be covered under this Policy or any imminent threat that may result in a pollution incident that may be covered under this Policy. In the event that we assert a right to mitigate or clean-up, then any amounts we spend to mitigate or clean-up shall erode the applicable Limits of Liability and the insured will reimburse us for any portion of any applicable Deductible advanced while taking such action.

\*\*\*

**E.   Insured's Right to Give Notice of Possible Claim Under Coverages 3A-3C (Site Pollution Incident Liability)**

If during the policy period the insured becomes aware of a pollution incident that commenced on or after any applicable retroactive date and before the end of the policy period, and which may reasonably be expected to give rise to a claim against the insured, the insured may give us written notice during the policy period of such pollution incident and the reasons for believing that a claim may arise. Such notice must include the following to the extent possible:
   1. The circumstances under which the insured first became aware of the pollution incident;
   2. The nature, location and date of commencement of the pollution incident; and
   3. The identity of anticipated or potential claimants;
   4. The bodily injury, property damage or clean-up cost that has resulted or may result from the pollution incident;
   5. All available engineering information relating to the pollution incident; and
   6. Any other information that we deem reasonably necessary.

In the event the insured provides such notice, all claims otherwise covered under Coverages 3A through 3C (Site Pollution Incident Liability coverages) that arise out of such pollution incident and are first made against an insured and reported to us within 5 years after the end of the policy period shall be deemed to have been first made against an insured and reported to us during the policy period.

(ECF No. 15-2, pp. 27-29, PageID #238-240.)

Olymbec asserts that it "timely notified Defendant Aspen of Ohio EPA's civil proceedings and requested coverage under the Policy. Aspen refused to provide coverage." "On August 10, 2016, Olymbec asked Aspen to withdraw its coverage denial and to provide it coverage in and related to the Ohio EPA civil proceeding." "Ohio EPA has informed Olymbec that, as owner of the property,

Olymbec is responsible under Ohio law for corrective action related to and closure of what Ohio EPA characterizes as Closed Loop's unpermitted hazardous waste facility." "On December 16, 2016, Olymbec submitted to Ohio EPA an Interim Site Management Plan for the initial response to issues Ohio EPA raised about the condition of the Property." (*Complaint*, ECF No. 15, ¶ 24-29.) Olymbec has alleged sufficient facts to present a plausible claim that it advised Aspen of its possible claim under the provisions of the Policy, sufficient to overcome Aspen's Rule 12(b)(6) motion to dismiss.

Defendant has also asserted various exclusions and defenses in its motion to dismiss, none of which defeat the plausible claims presented in the Complaint in the case at bar at this stage of the proceedings.

## IV. DEFAULT JUDGMENT AGAINST DEFENDANT CLOSED LOOP

Plaintiff has moved for default judgment pursuant to Fed. R. Civ. P. 55, and Local Rule 55.1(b). This Court's Local Rules address default judgments:

> **55.1 Defaults and Default Judgments**
> (a) If a party makes proper service of a pleading seeking affirmative relief but, after the time for making a response has passed without any response having been served and filed, that party does not request the Clerk to enter a default, the Court may by written order direct the party to show cause why the claims in that pleading should not be dismissed for failure to prosecute.
>
> (b) If a party obtains a default but does not, within a reasonable time thereafter, file a motion for a default judgment, the Court may by written order direct the party to show cause why the claims upon which default was entered should not be dismissed for failure to prosecute.
>
> (c) Nothing in this Rule shall be construed to limit the Court's power, either under Fed. R. Civ. P. 41 or otherwise, to dismiss a case or one or more claims or parties for failure to prosecute.

S.D. Ohio Civ. R. 55.

On May 1, 2017, Plaintiff applied for and obtained an entry of default against Defendant Closed Loop Refining and Recovery, Inc. from the Clerk of the Court pursuant to Fed. R. Civ. P. 55(a). (ECF Nos. 26, 27.) On May 31, 2017, Plaintiff responded to this Court's Show Cause Order (ECF No. 28), which directed Plaintiff to apply for default judgment within fourteen days of the

11

Court's Order. In response, Plaintiff filed an Application for Default Judgment pursuant to Local Rule 55.1(b) against Closed Loop as to liability, with the amount of damages to be determined. (ECF No. 29.) The Court has reviewed Plaintiff's motion and affidavits, and finds that the motion is well taken.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Aspen Specialty Insurance Company's ("Aspen") Rule 12(b)(6) Motion to Dismiss the Amended Complaint (ECF No. 18), and **DENIES as Moot** Defendant Aspen's Motion to Strike Olymbec USA, LLC's Notice of Supplement and Alternative Response to Notice of Supplement (ECF No. 31). Plaintiff's Motion to File Notice of Supplement *Instanter* (ECF No. 32) is **DENIED as Moot**. The Court **GRANTS** Plaintiff's Application for Default Judgment against Defendant Closed Loop (ECF No. 29) as to liability.

**IT IS SO ORDERED.**

\_\_9-18-2017\_\_
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**